### GRAY v. IZARD.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

BROKERS—ACTION FOR COMMISSION—CLOSING OF CONTRACT—EVIDENCE.

Evidence in an action by a broker for commission for sale of real estate *held* insufficient to sustain a judgment for plaintiff, on the ground that the contract between the vendor and buyer was closed, with the provision that the mortgage for the balance of purchase money should contain a release clause, rather than that the meeting was adjourned for the purpose of seeing whether the vendor could use such a mortgage, which he afterwards refused to take, preventing a sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 116.]

Hooker, J., dissenting.

Appeal from Municipal Court, Borough of Queens, Second District.

Action by Joseph M. Gray against Ralph Izard. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

R. W. Kellogg, for appellant.
James A. Gray, for respondent.

JENKS, J. This is an appeal from a judgment of the Municipal Court in favor of the plaintiff and against the owner of real estate for broker's commissions. The broker brought together the agent of the proposed purchaser and the owner to execute a contract, and a draft thereof was submitted to the owner. After discussion the matter was adjourned by mutual consent until the following day. The witnesses do not differ materially as to many of the occurrences at that meeting. The clash is over the question as to what was settled between the proposed purchaser and the defendant, and what was unsettled when the adjournment was taken. The purchase price was $15,000, of which $1,000 was due at once, $4,000 on January 1, 1907, and $1,000 to be secured by a first mortgage. Possession was to be given on July 1, 1907. The purchaser (or at least her agent), the broker, an attorney representing the purchaser, the defendant, and an attorney who had

come in to represent the regular counsel of the defendant, attended the meeting. A draft contract proposed by the purchaser was submitted to the defendant. It contained the terms which I have stated, and also a provision that the mortgage should contain a release clause. The defendant drew back on account of the release clause. He said that he was ignorant of the effect of such provision, that he wished to use the mortgage as collateral for a loan, and that he did not know whether a bank would as readily lend him money and take the mortgage as security if it contained such provision. He asked the attorney who represented the purchaser (and who also was an attorney for defendant's bank, but not as such attorney) if he could advise him. He asked his own attorney. The first attorney said to him: As "a rule everybody, even the banks, are very shy of taking mortgages with release clauses." The second attorney declined to advise him. At defendant's suggestion, the plaintiff went downstairs to defendant's bank to ascertain the disposition of the bank as to such a mortgage, and, returning, said he could not find either one of the officers who could answer that inquiry. The defendant also said that he wished to submit the draft contract to his regular counsel. The plaintiff's witnesses testify that the purchaser then spoke up, and, giving his reasons, said that the matter as to its terms must be closed then and there, or not at all; that he did not object to an adjournment, so far as the legal aspects of the contract were concerned, in order that defendant might consult counsel, but it must not be for any other purpose; and that the defendant then said the contract was satisfactory, save that he wished to consult his counsel. On the other hand, the defendant and his witnesses testify that the purchaser said that if defendant wished to consult his counsel on the legal aspects it was all right, but if defendant wished to consult him on the business part— Whereupon the defendant replied that he did not wish to consult his counsel on the business part, but the banks, and that he would consult the banks, and thereupon the adjournment was taken in order that he might consult counsel and determine the effect of the release clause on the mortgage if he sought to borrow money on its security.

It is not disputed that the defendant thereafter notified the purchaser that he could not use the mortgage with the release clause, and that he declined to proceed with the affair. As the result reached at the time of adjournment has no precise statement, the proof thereof depends upon the testimony of the witnesses as to what was said, what was settled, and what was left open when the discussion closed. The burden of proof was upon the plaintiff. It seems to me that he did not sustain it. It is not a question of what the purchaser understood, or what the defendant understood, but upon what propositions the minds met. It does not seem probable that the defendant, who desired to use the security which represented two-thirds of the consideration, who objected to its proposed form, who said he was ignorant of the effect of the clause, who was informed by those whom he could consult then that such clause would probably impair its proposed use by him, who tried then and there to ascertain whether he could use it at his bank, and who said that he would not close the matter until he could be assured on that point, would have yielded so vital a point,

and that the adjournment then consented to was taken with the clear understanding of both parties that the only question open was the legal effect of a draft contract. It is true that the plaintiff testifies that he had theretofore communicated all of the terms over the telephone to the defendant, who accepted them; but this is denied by the defendant, and his denial is strengthened by the letter put in evidence by the plaintiff, which defendant wrote confirming the acceptance, which restates terms definitely, but makes no mention of any release clause.

That witnesses differ materially does not necessarily lead to the inference that some of them are perjurers. When testimony is as to words, and not facts, it is common knowledge with us that the variances of witnesses equally honest are wide. The memory of one is more retentive than another. The memory of one is more impressed with some expression than another. Witnesses recall, not record or reproduce, and often arrive at different conclusions of what the parties meant or concluded by their language as the witnesses then understood their words or thereafter recall them. It is hard to find two witnesses who will agree as to the precise conclusion reached as the result of a long discussion, when the conclusion has not been finally stated or definitely recorded.

I advise a reversal of this judgment and the ordering of a new trial; costs to abide the event. All concur, except HOOKER, J., who dissents.

---

(123 App. Div. 204.)

### BURGHEN et al. v. ERIE R. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1908.)

1. INJUNCTION—COMPLAINT—INJUNCTION AND DAMAGES—JOINDER.

    2. ACTION—JOINDER OF CAUSES—PARTIES.

    Where several riparian owners unite in an action against several defendants to restrain them from maintaining bridges so as to flood plaintiffs' lands and for damages for the injury that has already resulted therefrom, it is a misjoinder of causes of action, precluding recovery.

Appeal from Special Term, Erie County.